[Criminal No. 282.   Filed April 2, 1910.]

[108 Pac. 243.]

## S. J. WILLIAMS, Defendant and Appellant, v. TERRITORY OF ARIZONA, Respondent.

1. STATUTES—CONSTRUCTION—PENAL STATUTES.—The rule of strict construction of penal statutes does not obtain in Arizona, and the provisions of the Penal Code are to be construed according to the fair import of their terms, with a view to effect their object and promote justice, under the express provision of Penal Code of 1901, section 5.

2. FALSE PRETENSES—CHEAT—OBTAINING MONEY BY WORTHLESS CHECK. The obtaining of money or property by means of a check on a bank in which the maker keeps no account was not a cheat at common law prior to 30 George II, chapter 24, section 1, making criminal the obtaining of money or property by false pretenses, but after the enactment thereof was indictable as a false pretense.

3. SAME—OBTAINING MONEY BY WORTHLESS CHECK.—The offense of obtaining money or property by means of a worthless check may be punished under Penal Code of 1901, section 481, making the obtaining of money under false pretenses a misdemeanor.

4. WORDS AND PHRASES — "FALSE."—"False" means erroneous, untrue, the opposite of correct or true, and, as often used, does not necessarily involve turpitude of mind, but in the more important uses in jurisprudence, and even in its popular application, the word implies something more than a mere untruth, but is an untruth coupled with

a lying intent, or intent to deceive, or to perpetrate some treachery or fraud.

5. FALSE PRETENSES—OBTAINING MONEY BY "FALSE CHECK."—A check is "false" within Penal Code of 1901, section 489, making it a felony to obtain money or property by a false or bogus check, when it is a willfully untrue written order directing a bank to pay money on demand.

6. WORDS AND PHRASES — "BOGUS." — The word "bogus" is defined as spurious, fictitious, sham.

7. WORDS AND PHRASES—"SHAM."—"Sham," the adjective, is defined as false, counterfeit, pretended, feigned, unreal; and the noun is given the primary meaning of that which deceives expectation, any trick or fraudulent device that disappoints, a make-believe, imposition, humbug.

8. FALSE PRETENSES—OBTAINING MONEY BY "BOGUS CHECK."—A check given by a person upon a bank in which he has no funds, and which he has no reason to suppose will be honored, is a "bogus check" within Penal Code of 1901, section 489, making it a felony to obtain, or attempt to obtain, with intent to cheat, any money or property by a false or bogus check.

APPEAL from a judgment of the District Court of the Second Judicial District, in and for the County of Cochise. Fletcher M. Doan, Judge. Affirmed.

STATEMENT BY THE COURT.

The defendant S. J. Williams was indicted by the grand jury of Cochise county for the offense of willfully, unlawfully, knowingly and feloniously, and with intent to cheat and defraud one Frank Byrd of the sum of sixty dollars, by making, signing and delivering to said Frank Byrd, a certain false and bogus check upon the First National Bank of Douglas, Arizona. The said defendant issued a check on the said bank knowing, as he is charged in the indictment, that no funds were in the bank to his account to meet the check. The evidence showed that the check was signed by the true name of the defendant and was his genuine signature. After the territory had closed its case, the defendant moved for a directed verdict, which was denied, and went to trial. A verdict of guilty was returned, and after a motion for a new trial had been made and overruled, the court pronounced judgment upon the defendant, sentencing him to a term of three years' imprisonment in the territorial prison at Florence. To said judgment and the order denying a new trial the defendant excepted and prosecutes his appeal to this court.

Harry E. Pickett, for Appellant.

A check which bears the genuine signature of the maker thereof is a genuine check, even though it is worthless, and is not a "false and bogus check." *Pierce* v. *Illinois,* 81 Ill. 98,

John B. Wright, Attorney General, for Respondent.

LEWIS, J.—The argument of counsel is addressed to the sole question: Is a check signed by the maker thereof, he never having had funds in the bank upon which such check was drawn, nor reason to believe that such check would be honored, a false and bogus check within the meaning of section 489 of the Penal Code of the Revised Statutes of 1901, providing: "Every person who, with intent to cheat and defraud, shall obtain, or attempt to obtain from any other person or persons, any money, property, or valuable thing whatever, by means or by use of any trick or deception, or false or fraudulent representation, or statement of [or] pretense, or by any other means or instruments, or device, commonly called the 'confidence game' or by means or by use of any false or bogus check, or by any other printed, written or engraved instrument, or spurious coin or metal, shall be deemed guilty of a felony. . . ." In this territory the rule of strict construction of penal statutes does not obtain. The provisions of the Penal Code are to be construed according to the fair import of their terms, with a view to effect its object and to promote justice. Rev. Stats. 1901, Penal Code, sec. 5. "Words and phrases must be construed according to the context and to the approved usage of the language." Penal Code, sec. 7, subd. 16; *Miller* v. *Territory,* 9 Ariz. 123, 80 Pac. 321. Section 489, under consideration, is one of a series of statutes embraced in chapter 8, title 13, of the Penal Code, denouncing certain false personations and frauds as crimes. At common law, and until the enactment of 30 George II, chapter 24, section 1, making criminal the obtaining of money or property by means of false pretenses, offenses somewhat analogous to these were prosecuted under the general denomination of cheats. However, the obtaining of money or property by means of a worthless check was not a cheat. "If a man induces another to part with goods by drawing and delivering in payment his check on a bank in which he keeps no account, he thus merely puts a

falsehood in writing. The check is no token, and he is not indictable (for a cheat) at common law." Bishop's Criminal Law, sec. 147. "Under the subsequent statutes against obtaining money by false pretenses it has been held that the obtaining of money or property by means of a worthless check was a false pretense, and was indictable as such." 2 Bishop's Criminal Law, sec. 421. "The representation is inferred from the act, and the pretense may be made by implication as well as by verbal declaration. In the case at bar the defendant presented his own checks on a bank with which he had an account. What did this imply? Not necessarily that he had funds there. Overdrafts are too frequent to be classed with false pretenses. A check, like an order on an individual, is a mere request to pay. And the most that can be inferred from passing it is that it will be paid when presented, or, in other words, that the drawer has in the hands of the drawee either funds or credit. If the drawer passed a check to a third person, the language of the act is that it is good and will be duly honored. And in such case, if he knew that he had neither funds nor credit, it would probably be holden to be a false pretense." *Commonwealth* v. *Drew,* 19 Pick. (Mass.) 179–186. "Forgery at common law was but a common-law cheat, or attempt to cheat, set off from the rest and called by a separate name because of its special heinousness." 2 Bishop's Criminal Law, sec. 148.

Under the authorities the offense of obtaining money or property by means of a worthless check might be punished under section 481 of our Penal Code, declaring the obtaining of money under false pretenses a crime. This statute, however, makes the crime a mere misdemeanor. It is apparent from a consideration of the growth of the law of cheats that it was early deemed advisable to distinguish cheats by means of forged instruments as an independent crime, more heavily punishable as such. With the increasing use of checks, as a substitute for currency, the frequency and facility with which frauds were successfully perpetrated by means of the use of worthless paper attracted the attention of legislators. The mischief resulting from its issuance was hardly less than the evil ensuing from the utterance of forged paper. So long as the crime was a misdemeanor, the temptation to its commission was great. It, therefore, became desirable to place a

heavier penalty upon crimes so perpetrated than upon those committed by means of other false pretenses. Section 489 is one of the class of statutes enacted for the purpose of meeting this evil. It fixes the penalty therefor somewhat less than that for forgery, but greater than that for obtaining money by other false pretenses.

In determining whether or not the statute accomplishes the intent of the legislature, we have to consider the meaning of the words "false" and "bogus." These words are not used in the conjunctive in the statute, and the meaning of each will be examined.

False: "Erroneous, untrue; the opposite of correct, or true; and often the term, as used, does not necessarily involve turpitude of mind. In the more important uses in jurisprudence, and even in its popular application, the word implies something more than a. mere truth; it is an untruth coupled with a lying intent, or an intent to deceive or to perpetrate some treachery or fraud. The true meaning of the term must, as in other instances, often be determined by the context." 19 Cyc. 314; Am. & Eng. Ency. of Law, 661; Abbott's Law Dictionary; Webster's New International Dictionary; Century Dictionary.

A wide range of meaning has been given by the courts to this word.

False affidavit: "Includes one false in recitals of facts, though sworn to by a person really existent, under a statute making the presentation of an affidavit in support of a claim against the government a felony, where presented 'with intent to defraud by one knowing the same to be false, altered, forged, or counterfeit.' " *United States* v. *Staats,* 8 How. 41, 12 L. Ed. 979.

False affidavit: "Relates to the form of the paper, and is false though the officer administering the oath was not qualified nor the oath administered, nor the paper forged." *United States* v. *Ingraham* (C. C.), 49 Fed. 155.

False bank note: A forged paper in the similitude of a bank note or which on its face appears to be such a note. *United States* v. *Howell,* 11 Wall. 432, 20 L. Ed. 195.

False brand: Erroneous through intention or culpable negligence. *Hatcher* v. *Dunn,* 102 Iowa, 411, 71 N. W. 343, 36 L. R. A. 689.

False certificate of acknowledgment: Erroneous through intentional dereliction of duty. *Commonwealth* v. *Haines,* 97 Pa. 228, 39 Am. Rep. 805.

False certificate of citizenship: "Within the meaning of a statute which makes it criminal to use any false, forged, antedated, or counterfeited certificate of citizenship, is not limited to one which is forged, but includes one which is false in its recitals of facts." *Dolan* v. *United States,* 133 Fed. 440, 69 C. C. A. 274.

False document: "A document purporting to be made by a person who did not make the same or a document purporting to be made by some person who did not in fact exist." 19 Cyc. 315.

False entry: "An entry knowingly and purposely made on the books of the bank with intent to deceive or defraud, as charged, which represents as an actual transaction one which does not and did not exist, or an entry knowingly and purposely made with intent to deceive and defraud, as charged, which in a material part falsely and untruly represents an actual and existing transaction." *Coffin* v. *United States,* 162 U. S. 664, 683, 16 Sup. Ct. 943, 40 L. Ed. 1109.

"It would be an unnatural and strained construction of the statute to hold that the words 'false entry' mean forged entry, fictitious entry, or any other entry made by any person not authorized to make the report, or at least who did not make it. The context of the statute shows that the word 'false' is used in contradistinction to the word 'correct.' " *United States* v. *Potter* (C. C.), 56 Fed. 83–94.

False instrument: Counterfeit; not genuine (under forgery statute). *State* v. *Willson,* 28 Minn. 52, 9 N. W. 28.

False pretense: False to the knowledge of the maker, as well as untrue in fact. Wharton's Criminal Law, 8th ed., sec. 1185.

False return: It must appear, if not a design to mislead and deceive, at least such culpable negligence in the making of a return as carries with it the consequences of intentional default. *Ratterman* v. *Ingalls,* 48 Ohio St. 468, 28 N. E. 168, 171.

False swearing: An intentional statement under oath of a fact known to be untrue. *State* v. *Smith,* 63 Vt. 201, 22 Atl. 604.

False token: "A bank check may be a false token, and would be such under the statute, if the drawer knew when he gave it, payable to a person other than himself, that he had neither funds to meet it nor credit at the bank upon which he drew it." *People* v. *Donaldson,* 70 Cal. 116, 118, 11 Pac. 681.

The word is thus seen to be of broad meaning. We shall not limit it as used in the statute by a definition which may exclude crimes properly cognizable thereunder. It is sufficient for the purposes of this case to hold that a check is "false" within the statute when it is a willfully untrue written order, directing a bank to pay money on demand.

The word "bogus" has not been the subject of frequent judicial interpretation. In fact, no case has been cited to us, nor have we found one, which clearly defines the meaning of the word. Bogus is defined as "spurious, fictitious, sham."

"Sham," the adjective, is defined as "false, counterfeit, pretended, feigned, unreal." "Sham," the noun, is given the primary meaning of "that which deceives expectation; any trick or fraudulent device that disappoints, a make-believe, imposition, humbug." Webster's New International Dictionary.

Under these definitions, and again without limiting the use of the word, we hold that a check given by a person upon a bank in which he has no funds, and which he has no reason to suppose will be honored, is bogus within the statute.

Our attention has been directed to the case of *Pierce* v. *People,* 81 Ill. 98, in which the meaning of the expression "false and bogus checks" as used in a similar statute was considered. Mr. Justice Schofield, delivering the opinion, says: "The position that the note and orders given by the defendant come within the meaning of the words 'false and bogus checks' as used in this section cannot be maintained. Had they contained forged or fictitious indorsements, there would be reason for calling them false or bogus, but they contain no indorsements whatever, and it is not disputed the defendant's signature to them was genuine. Anyone taking them, therefore, would necessarily do so upon the faith of the defendant's signature alone; and, of however little value they were, this was solely because of the defendant's insolvency, and not because of any false or bogus character of the instruments. Nor

XIII Ariz.—3

can it be said the money or property was obtained by the use of the note or orders. Money and property were obtained by the defendant on the belief which he had inspired by his ability and disposition to pay, and the note and orders were given by him and received by the party from whom the money and property were obtained as an evidence of the indebtedness, and when and how it was agreed to be paid and nothing more.''

A careful reading of the entire opinion discloses that this language is used in view of the fact that the money and property had been obtained, not solely by means of these notes and orders, but by a number of prior and independent false representations, which gave the defendant a credit to which he was not entitled. It does not clearly appear that the orders mentioned were checks. The notes clearly are not. If these notes and orders were mere evidences of indebtedness, given subsequent to the obtaining of the money and property, as indicated by the court, the language is clearly dicta. If the word ''check'' may be extended to include notes and orders payable at a future time, there exist sound reasons for the limitation here placed upon the meaning of the words ''false'' and ''bogus.'' As to this, however, we express no opinion.

The judgment of the trial court is affirmed.

KENT, C. J., and CAMPBELL and DOE, JJ., concur.