### E. C. PHENIS v. STATE.

No. 4303.    Opinion Filed Oct. 25, 1924.
(229 Pac. 652.)

(Syllabus.)

**False Pretenses—Information—When Necessary to Allege Actual Deception.** An information predicated on a false pretense

statute of a general nature should allege a false representation, coupled with a reliance upon such representation and an actual deception, unless the statute itself designates the doing of some specific act a false pretense. In such cases a statement that the injured party was actually deceived need not be made.

Appeal from District Court, Cotton County; A. S. Wells, Judge.

E. C. Phenis was convicted of obtaining money by false pretense, and he appeals. Reversed.

Amil H. Japp, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

BESSEY, J.   The plaintiff in error, E. C. Phenis, here referred to as the defendant, was in the year 1920 clerk of the school board at Devol, Okla. T. C. Dillon was treasurer and S. W. Gregory president of the board. The defendant was a general contractor by occupation, and owned and operated some trucks. Devol is situated near Red River, adjacent to the Burkburnett oil field in Texas, and about this time there was an unusual influx of people into the town and vicinity of Devol, so that the school facilities became inadequate to care for the pupils who desired to attend school. The board therefore advertised that on a certain day they would receive bids on a contract to transport the children to and from school, but no bids were received. This was near the opening of the school term, and there was not time enough to readvertise. The other members of the board then suggested that Phenis, the clerk, by reason of his ownership of these trucks, could help out in this emergency. It was recognized that Phenis, being a member of the board, could not legally take the contract, and to obviate that difficulty Phenis procured one of his employes, a Mr. King, to take

the contract in his name. King was to manage the transportation, using the trucks belonging to Phenis, and Phenis and King were to divide the profits in equal shares. King subsequently refused to recognize the claim of Phenis to a share in the profits.

In the course of time Phenis drew a warrant against the school treasurer in the amount of $730.75, payable to the First National Bank of Devol, "for a draft for furniture." Phenis procured the signature of S. W. Gregory, the president of the board, to the warrant, and Phenis attested it as clerk, and as clerk went to the First National Bank and exchanged the warrant for a cashier's check in the same amount. This check he then cashed and appropriated the money to his own use—as he claims, to reimburse himself for his interest in the King contract. The president of the board said that to procure his signature to the warrant Phenis claimed that he wanted it to take up a draft for furniture at the bank. The material part of the amended information in this case reads as follows:

"That at and within the county of Cotton and state of Oklahoma on the 29th day of October, 1920, E. C. Phenis, who was then and there the clerk of the school district board of consolidated school district No. 2 of Cotton county, Oklahoma, then and there being, did then and there willfully, unlawfully, feloniously and designedly and with the intent to cheat and defraud the said consolidated school district No. 2 of Cotton county, state of Oklahoma, of the sum of $730.75, obtain the said sum of $730.75 from school district by means of false and fraudulent representations, statements and pretense, to wit, that said Phenis did then and there draw up a school warrant on said district, a copy of which warrant is hereto attached and marked Exhibit A and made a part hereof, in the sum of $730.75, and by falsely and fraudulently representing to S. W. Gregory, who was then and there the president of the school board of said district, that the said warrant was to pay for a draft against said district

for furniture for said district at the First National Bank of Devol, Oklahoma, procure and induce the said S. W. Gregory to sign said warrant as the president of said board, and that on November 1, 1920, the said Phenis sold and delivered said warrant to the said bank, he then and there falsely representing to said bank that he, as the clerk of said board, was to purchase with the proceeds of said warrant certain furniture for said district, and thereby did induce said bank to pay him in exchange for said warrant a cashier's check in the sum of $730.75, to the order of said Phenis, a copy of which check and indorsements thereon being hereto attached, marked Exhibit B and made a part hereof, and that the said Phenis did thereafter convert and sell said check and used the proceeds for his own use and benefit, and did not buy furniture or any other supplies for said district; and that the said warrant so sold to said bank has been paid from the sinking fund of said district, and that all of said statements of E. C. Phenis have been with intent to cheat and defraud said district, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of Oklahoma.''

This prosecution seems to have been based upon section 2146, Compiled Statutes 1921, which reads as follows:

"Every person who, with intent to cheat and defraud, shall obtain, or attempt to obtain, from any other person or persons, any money, property, or valuable thing, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument or device, commonly called the 'confidence game,' or by means or by use of any false or bogus check or by any other written or printed or engraved instrument or spurious coin or metal, shall be deemed guilty of a felony, and, upon conviction, be punished by imprisonment in the penitentiary * * * not exceeding seven years.''

An examination of our several penal statutes upon the subject of false pretense discloses that there are at least 27 ways of committing such an offense. The defendant in his

brief, and in his demurrer to the information in the trial court, says that this information does not sufficiently charge any offense. The information might be considered as stating facts sufficient to sustain a charge of larceny by fraud, but the case was not tried on that theory, and the instructions of the court covered only the crime of false pretense.

Section 2145, Comp. Stat. 1921, is as follows:

"Any person who, with intent to cheat or defraud another, designedly, by color or aid of any false token or writing, or other false pretense, obtains the signature of any person to any written instrument, or obtains from any person any money or property, is punishable by imprisonment in the penitentiary not exceeding three years or in a county jail not exceeding one year, or by a fine not exceeding three times the value of the money or property so obtained, or by both such fine and imprisonment."

The gist of the offense here was the fraudulent procuring of the signature of the president of the board. The information as drawn would be sufficient under section 2145, supra, except that no allegation appears to the effect that the treasurer believed the false representations were true, and relied upon them as the moving inducement causing him to affix his signature to the warrant.

Ordinarily an information brought under a penal false pretense statute of a general nature should allege a false representation, coupled with actual deception. Suppose the president of the board knew at the time he signed this warrant that it was fraudulent; he would then be an accomplice to the fraud, but the fraud so perpetrated would not be false pretense within the purview of either of the statutes above quoted, or of any other of the several statutes on that subject. The court, in instructing the jury, told them that in order to sustain the charge they must find that "said S. W. Gregory relied upon the said false and fraudulent represent-

ations when he signed the said warrant." If that was an essential element of the offense, and if the jury were required to find as a fact that the president of the board was deceived by a false statement made to him, which at the time he believed to be true, it was necessary to a statement of a complete offense to allege that fact in the information.

This is not a technical, captious rule, but one founded in reason to avoid the absurdity of prosecuting one for false pretense, where the false statement made was known by all to be false, and where there was in fact no deception, and the rule as here stated is not out of harmony with what was said by this court in Bennett v. State, 21 Okla. Cr. 27, 204 Pac. 462, relating to a "bogus check." In the case now under consideration the gist of the offense was the procuring of a signature to a written instrument by means of a false pretense, and the usual, established rule of pleading in false pretense cases should apply.

There is some evidence in this record tending to show that the other members of the board, in the first instance, connived with this defendant to violate his official trust. Now, if the president at the time he signed the warrant knew that there was no draft at the bank for furniture, or knew that no bill for furniture of this character existed, or knew that the defendant intended to reimburse himself for money due him on an illegal contract in which all were implicated, the defendant should not be prosecuted for false pretense. Proper negative averments should have been made in the information, stating that the treasurer did not know these things, and that he was deceived and acted upon false representations which he believed true.

It has been held by this court and others that, where money is obtained by means of a "false and bogus check," it is not necessary to plead specifically that the person de-

frauded relied upon the false representations made. Bennett v. State, 21 Okla. Cr. 27, 204 Pac. 462; Douglas v. State, 15 Okla. Cr. 648, 179 Pac. 947; Williams v. Ter., 13 Ariz. 27, 108 Pac. 243, 27 L. R. A. (N. S.) 1032. The terms "bogus check" and "confidence game" themselves import deception, without specific averments to that effect, but the allegation that one fraudulently obtained the signature of another to a written instrument carries no such implication.

The relaxation of the general rule concerning the averments as to actual deception should not apply in a case like this. Section 2146, supra, upon which this prosecution is based, the "bogus check" statute, is an anomaly. Obtaining money by means of a bogus check or a confidence game are offenses in a class by themselves, made so by statute; but the offense of procuring a signature to an instrument by fraud must be measured by the established test applying to other false pretenses of like nature, and the information should state facts showing an actual deception as an essential element of the crime. Taylor v. Ter., 2 Okla. Cr. 1, 99 Pac. 628; Fuller v. Ter., 2 Okla. Cr. 86, 99 Pac. 1098; Helsey v. State, 18 Okla. Cr. 98, 193 Pac. 50, 17 A. L. R. 197; State v. Miller, 47 Or. 562, 85 Pac. 81, 6 L. R. A. (N. S.) 365.

We hold, therefore, that where a false pretense is charged, predicated upon facts that bring it within the purview of the general statutes covering that offense, it is still necessary to state that the person to whom the representations are made is actually deceived. There are cases where this is not necessary, where a special statute of itself makes some specific act the crime of false pretense.

The information was defective, because two different offenses were imperfectly stated, and because it does not charge that the persons wronged relied upon the false representations. The demurrer to the information should have

been sustained. The judgment is reversed, and the cause remanded, with instructions to the trial court to sustain the demurrer and direct that a new or amended information be filed preliminary to a new trial.

MATSON, P. J., and DOYLE, J., concur.