## JESSE PULLIAM v. STATE.

No. A-9124.   Feb. 19, 1937.
(65 Pac. [2d] 426.)

20

24

Abe Wildman, H. M. Curnutt, John W. Tillman, and Fred A. Tillman, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DOYLE, J.  This is an appeal by the defendant Jesse Pulliam from a conviction of murder and judgment and sentence of imprisonment in the state penitentiary for and during the term of his life.

The information charges that:

"On or about the 24th day of August, 1934, in said County and State, the defendant, Jesse Pulliam, then and there being, did then and there wrongfully, wilfully, unlawfully, intentionally and feloniously, and while acting together with one John Stacy, without authority of law, and with the premeditated design to effect the death of one E. W. Williams, make an assault in and upon the said E.W. Williams, with a certain dangerous and deadly weapon, to-wit: a claw hammer, and did then and there with said weapon as afore-stated, strike, beat, batter and wound the said E. W. Williams about his head, thereby crushing the skull of E. W. Williams, of which said wounds the said E. W. Williams did, on the 25th day of August, 1934, die, as was intended by the said defendant, Jesse Pulliam, and one John Stacy, that he should so do, contrary to," etc.

The overruling of the defendant's demurrer to the information is assigned as error.

Where an information charges that the injuries to the deceased were inflicted by the defendant with a premeditated design to effect death, and alleges the means with which the homicide was committed, it is sufficient. The demurrer was properly overruled.

Several assignments of error are based on exceptions to rulings on evidence.

The second assignment argued is that the trial court erred in failing to declare a mistrial when Sheriff Conner testified in the presence of the jury in answer to the following question of the county attorney:

"Q. When did you first begin your search for these two individuals? Objected to as incompetent, irrelevant and immaterial. Overruled and exception. A. Sunday night was the first we positively knew it was John and Jesse. Mr. Tillman: Your Honor please we move to strike

that. By the Court: Sustained. Mr. Tillman: At this time we move for a mis-trial on account of the voluntary statement of the sheriff. The Court: Overruled. Mr. Tillman: And we ask the court to instruct the jury to disregard the same. The Court: Gentlemen of the jury, you are instructed to disregard the last answer."

It is sufficient to say that this assignment is without merit. The answer of the witness was stricken by the court and an instruction given to the jury not to consider it.

The next assignment of error is based upon rulings of the court permitting Charles Cass to testify in rebuttal relative to statements made by the defendant after he had been apprehended, as follows:

"Q. Were you in the county attorney's office a few days after Jesse Pulliam was brought to the Osage county jail when he made some statements with reference to this transaction out here? A. Yes, sir. Q. I will ask you to state whether or not if the following questions were not asked him and if he did not answer as follows: Jesse, was there a winch on this truck that you were driving. answer: there was; question: was there a handle on that winch. answer: it was on the bed of the truck or I suppose it was, that is where it was generally kept. Would you know the winch handle if you were to see it. I believe I would. Is that it? That looks like it all right, it sure does. Did he made that statement? Mr. Tillman: Objected to as improper rebuttal, the witness wasn't asked about making those statements. The Court: He said he didn't make the most of them. Let him answer. Mr. Tillman: Give us an exception. By Mr. Carman: Q. Were those questions asked and those answers given. A. Yes, sir. Q. Question: Was there a hammer on your truck or in your possession that evening? Answer: I believe there was a hammer in the back of the truck or on the floor boards in the cab of the truck. Was that a claw hammer? Yes, sir, a claw hammer. Would you know it if you were

to see it? I don't know whether I would or not. Was it a straight claw hammer or were the claws curved or crooked? Curved I believe. Look at that and see if you can identify that. Answer: I don't know if it is or not, I believe it is. You believe it is. Answer: yes sir. Mr. Tillman: Just a moment, the same objection, he answered that he might have testified to that. The Court: Overruled. Mr. Tillman: Exception. A. He did. By Mr. Carman: Q. At the time that he made this statement with reference to the hammer was this hammer shown to him? (indicates the hammer in evidence) Mr. Tillman: Objected to as improper rebuttal. The Court: Overruled. Mr. Tillman: Exception. A. Yes, sir."

It is contended that this evidence should have been introduced as a part of the state's case in chief, and it is urged that it was prejudicial error on the part of the court to permit the county attorney to rehash the state's testimony after the defense had closed. Citing Corliss v. State, 12 Okla. Cr. 526, 159 Pac. 1015.

An examination of the record discloses that this testimony was in no sense a rehash of the evidence adduced as a part of the state's case in chief, and was admitted in rebuttal and for impeachment purposes.

An examination of the cross-examination of the defendant as a witness in his own behalf discloses that the defendant was questioned relative to the making of these statements. Some of them he positively denied. In other instances he answered vaguely with, "I might have, I don't know," or, "I might have answered that way, I don't know for sure." The less important part of his statements he some time admitted having made. It appears when the county attorney began his questions as to the statements made in the county attorney's office, counsel for the defendant stated:

"Now if your Honor please, if there are going to be parts of statements made in the county attorney's office, the defendant asks that all be read."

It appears the defendant admitted that the winch handle which was picked up near the stand looked like the one which belonged on the truck. As a part of his defense the defendant and his witnesses denied that the winch handle was lost off the truck. They also denied that the hammer which was found, and with which the murder evidently was committed, was in the truck or in the possession of the defendant.

When asked on cross-examination about the making of this statement he answered evasively.

Our Procedure Criminal (St. 1931), section 3057, in part provides:

"The jury having been impaneled and sworn, the trial must proceed in the following order:

"First. If the indictment or information is for a felony, the clerk or county attorney must read it, and state the plea of the defendant to the jury. In other cases this formality may be dispensed with.

"Second. The county attorney, or other counsel for the state, must open the case and offer the evidence in support of the indictment or information.

"Third. The defendant or his counsel may then open his defense, and offer his evidence in support thereof.

"Fourth. The parties may then, respectively, offer rebutting testimony only, unless the court for good reason, in furtherance of justice, or to correct an evident oversight, permit them to offer evidence upon their original case."

In the case of Claycomb v. State, 22 Okla. Cr. 315, 211 Pac. 429, 431, this court said:

"Portions of this testimony and that of other witnesses called on rebuttal related to matters controverting the testimony given by defendant, dovetailing in with facts that could have been introduced in chief. Rebuttal evidence is proof of facts tending to explain, repeal, counteract, or disprove matters given in evidence on the other side. 3 Bouvier's Law Dictionary, p. 2820.

"Evidence tending to clarify a disputed point may be properly rebuttal testimony, notwithstanding the fact that the same testimony might have been introduced in chief. Wigmore on Evidence, § 1873."

In Seigler v. State, 11 Okla. Cr. 131, 145 Pac. 308, 309, this court said in the seventh paragraph of the syllabus:

"(a) When the state makes out a clear case in chief, the fact that certain testimony was reserved for rebuttal which would have been admissible in establishing the case in chief, but which is clearly in rebuttal of the material defense, or testimony introduced in defense, does not render the same inadmissible in rebuttal.

"(b) Rebuttal testimony is properly that testimony which is given to explain, repeal, counteract, disprove, or destroy facts given in evidence by an adverse party. Any evidence may be given in rebuttal which is a direct reply to that produced by the other side or a contradiction thereof, or which tends to destroy the effect of the same."

Construing the fourth subdivision of section 3057, this court held in Hampton v. State, 7 Okla. Cr. 291, 123 Pac. 571, 40 L. R. A. (N.S.) 43:

"The fact that evidence may have been introduced in chief by the state does not necessarily prevent its introduction as evidence in rebuttal. The introduction of such evidence is a matter of discretion of the trial court, and will not be ground for reversal, unless an abuse of this discretion is shown."

It follows from what has been said that the objections thereto as improper rebuttal were properly overruled.

In another assignment the defendant complains that the court erred in giving instruction No. 7.

Upon the record before us counsel for the defendant have not properly raised the question. Only prejudicial errors raised by exceptions reserved, require a new trial, and it is only when we are satisfied that the verdict was contrary to law or to the evidence, or that injustice has been done, that we are permitted to reverse a conviction, whether or not an exception has been taken in the trial court.

It appears from the record that counsel for the defendant presented no request for instructions and no exceptions were taken to the instructions given by the court.

In charging the jury the court submitted the issue of "murder" as defined by the first subdivision of section 2216, wherein homicide is defined to be "murder":

"First. When perpetrated without authority of law, and with a premeditated design to effect the death of the person killed, or of any other human being."

The instructions given correctly stated the law of circumstantial evidence. As before stated, the defendant did not request the court to give instructions submitting the law of manslaughter in the first degree.

Our Procedure Criminal (St. 1931) section 3079, in part provides:

"Either party may present to the court any written charge, and request that it be given. If the court thinks it correct and pertinent, it must be given, if not, it must be refused. Upon each charge presented and given or refused the court must indorse or sign its decision."

Under this provision, if counsel for the defendant desires the court to give any particular instruction, or that one that is given be made more specific or comprehensive, it is the duty of counsel to prepare and present to the court such desired instruction and request that it be given, and in the absence of such request a conviction will not be reversed, unless this court is of the opinion, in the light of the entire record, including the instructions given, that the defendant may have been prejudiced by the erroneous instruction given and to which an exception was duly taken. Fitzsimmons v. State, 14 Okla. Cr. 80, 166 Pac. 453.

In Williams v. State, 12 Okla. Cr. 39, 151 Pac. 900, we said:

"If upon the trial of a criminal case special instructions are desired by the defendant, he is required by the provisions of our Code of Criminal Procedure to present in writing to the court the instructions desired, and it is not error for the trial court to omit to instruct upon every possible question under the defendant's theory of the case, when he has not requested such instructions."

If the defendant's counsel had requested further instructions and they had been refused, the question would have been properly raised upon exceptions taken. Merriott v. State, 18 Okla. Cr. 247, 194 Pac. 263; Reagan v. State, 35 Okla. Cr. 332, 250 Pac. 435; Carpenter v. State, 56 Okla. Cr. 76, 33 Pac. (2d) 637.

Upon a careful examination of the voluminous record, we find that the evidence upon the part of the state was sufficient to establish every material element of the offense charged. Its weight and convincing effect was for the jury, and having considered the assignment of error argued orally and in the briefs, we are satisfied that no exception taken upon the trial is of any force or merit.

32

Our conclusion is that the defendant had a fair and impartial trial.

The judgment of the district court of Osage county herein is therefore affirmed.

DAVENPORT, P. J., and BAREFOOT, J., concur.