Jesse CHAPA, and Dale Lee Slife, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–75–274.

Court of Criminal Appeals of Oklahoma.

Aug. 12, 1975.

Benjamin J. Curtis, Poteau, for appellants.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jim Patton, Legal Intern, for appellee.

OPINION

BLISS, Judge:

Appellants, Jesse Chapa and Dale Lee Slife, hereinafter referred to as defendants, were charged, tried and convicted in the District Court, LeFlore County, Case No. CRF–74–94, for the offense of Burgla-

ry in the Second Degree, After Former Conviction of a Felony. The punishment imposed for defendant Chapa was eleven (11) years' imprisonment. Defendant Slife received punishment of ten (10) years' imprisonment. From said judgments and sentences, a timely appeal has been perfected to this Court.

The State's first witness, Ray Kirkland, testified that he was the Undersheriff of LeFlore County and was so employed in June of 1974. At approximately 3:00 a. m. on the morning of June 13, 1974, he and another police officer saw the defendants walking along a road about three miles southeast of Heavener, Oklahoma. Kirkland said that he stopped his car, got out, placed the defendants under arrest and frisked them. The validity of the arrest is not called into question by appellants. Three knives were taken from the defendants' persons. The defendants were then taken to the Sheriff's Office where a search produced a clock, a billfold, some candy and some money from a paper sack which they were carrying.

On cross-examination Kirkland said that he was not afraid of the defendants when he arrested them. He frisked them because it was his procedure to frisk everyone he arrested. The defendants were arrested because Kirkland was looking for two individuals who fit the physical description of the defendants.

Emma Jean Hanley testified that at about 11:00 a. m. on June 12, 1974, she and her husband left their house to go shopping in Poteau, Oklahoma, and when they returned around 5:00 p. m. she noticed that a file she used to prop open a kitchen window was gone. Closer examination revealed that the window screen had been pulled off. She said that among the items missing from the house was some money from her son's room, her son's pocket knife, a small travel alarm clock, a butcher knife, a pair of jeans, some cigarettes, some beer, some milk and a pillow case. She stated that she could not identify the items taken from the defendants as being

hers, but the items which had been taken from her home looked like those found in the defendants' sack.

William A. Hanley testified next for the State and corroborated his wife's testimony.

The final witness for the State was Haskell Baugh. Baugh said that he was a Deputy Sheriff of LeFlore County on June 12, 1974, and in that capacity he was working with some other law enforcement agents using dogs in an attempt to capture the defendants. The dogs trailed the defendants up to the Hanley house and beyond the house for approximately three-quarters of a mile before losing the trail.

Following cross-examination of Baugh, the State rested. The defendants presented no evidence in their behalf.

 The defendants bring three assignments of error. The assignments will be considered numerically. The first assignment of error is that the trial court erred in admitting testimonial evidence inferring that the defendants were escaped convicts. Defendants claim that the effect of admitting this evidence was to create "a trial within a trial," and expose the defendants to convictions for the crime of escape rather than for the burglary with which they were charged.

The testimony complained of came from Undersheriff Kirkland's direct examination, (Tr. 35), as follows:

"Q. At the time that you were looking for these defendants I think that you said you had descriptive cards. Were you told, sir, how they were dressed?

"A. No, sir, I was told how they were dressed when they left camp is all.

"Q. and how were they dressed?

"A. They were supposed to have been dressed in white."

In *Farrar v. State,* Okl.Cr., 505 P.2d 1355 (1973), this Court, citing *Welch v. United States,* 371 F.2d 287 (10th Cir. 1966), stated:

"* * * [B]ut evidence tending to prove a material fact although inciden-

tally showing the defendant to have committed another crime, . . . is not inadmissible because of potential side effect. * * *"

The evidence that the defendants were not dressed in the uniform of the camp but, instead, in jeans was circumstantial evidence that tended to prove a material fact of the crime alleged and therefore was properly admitted. The Undersheriff's mention that the defendants had left the "camp" did not have the effect of creating "a trial within a trial." The subject of the escape was not mentioned anywhere else in the course of the trial. We hold this assignment to be without merit.

 Defendants' second assignment of error asserts that there was not sufficient evidence from which the jury could have found them guilty. We do not agree. In examining the record, we find evidence in the testimony presented by the State which, if believed, would justify the jury's verdict of guilty.

In *Fields v. State,* Okl.Cr., 322 P.2d 431 (1958), this Court cited with approval *Henderson v. State,* 95 Okl.Cr. 342, 256 P. 2d 393, 395, as follows:

"The function of the Criminal Court of Appeals is limited to ascertaining whether there is a basis, in evidence, on which the jury can reasonably conclude that accused is guilty as charged."

See also, *Disheroon v. State,* Okl.Cr., 357 P.2d 236 (1960) and *Williams v. State,* Okl.Cr., 373 P.2d 91 (1962).

Defendants' final assignment of error is that the items contained in the paper sack which was carried by the defendants should have been suppressed and not admitted into evidence for the reason that these items were obtained by an illegal search. The rationale of defendants' argument is that after arresting the defendants the scope of permissible search by the officers was limited to a search of the defendants' persons.

In the instant case the defendants do not question the validity of their arrests. The only question before us is the legality of the search incident to a valid arrest.

 In *Hampton v. State,* Okl.Cr., 501 P.2d 523 (1972), this Court cited *Wafers v. State,* Okl.Cr., 444 P.2d 825 (1968) as authority for the rule that an officer, incident to a valid arrest, may search not only the defendant's person but also the immediate place of the arrest. The officer may seize any dangerous weapon, or any evidence found either on the defendant's person or within the immediate place of arrest. Therefore, the contents of the sack that defendants were holding were properly admitted into evidence because the sack was within the immediate place of arrest. This assignment, therefore, is without merit.

In conclusion we observe that the record is free of any error which would justify modification or reversal. The judgments and sentences are accordingly, *affirmed.*

BRETT, P. J., and BUSSEY, J., concur.