E. E. GIBBONS v. STATE.

No. A-5594.   Opinion Filed June 10, 1926.
(246 Pac. 1107.)

C. H. Madden, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J.   On information charging that in Harmon county, December 25, 1924, E. E. Gibbons did sell whisky to one Delmar Yoakum, he was convicted, and

in accordance with the verdict of the jury sentenced to pay a fine of $50 and be confined in jail for 30 days.

A number of errors are assigned and argued, but one of which it is deemed necessary to notice, and that is that the court erred in its rulings on the cross-examination of the prosecuting witness.

The state relied for this conviction on the testimony of two witnesses.

Delmar Yoakum testified that he lived at Hobart, and was in the town of Gould on December 25, 1924, and that evening went to the home of Bedford Reville, and got a pint of whisky. He further testified:

"I don't know whether you would call it exactly buying or not; I pitched the money on the table, two and a half, and E. E. Gibbons handed me the whisky. When I started to leave to go back to town I saw Sheriff Smith in the yard. Bedford Reville and his wife and another man and woman, I don't know their names, were there."

On cross-examination, he was asked:

"Q. You are the same Delmar Yoakum who testified in the two cases against Mr. Blassingame, are you not? A. Yes, sir.

"Q. You testified that you sold whisky to (interrupted by state's objection).

"Mr. Madden: The idea is to impeach the witness.

"The Court: I don't think it is material."

The jury excused. Defendant offers to introduce the testimony of this witness in a former case, State against W. W. Blassingame, wherein he testified that he sold whisky to E. E. Gibbons that evening and offers to prove by this witness that such is the fact.

"The Court: The objection of the state's attorney sustained, and the offer of evidence refused. Exception allowed.

"Q. You were selling whisky around town that day, were you not, Mr. Yoakum? A. I was.

"Q. How much whisky did you sell that day? A. I sold a gallon.

"Q. Where did you get that whisky? A. I got it out in the country a ways.

"Q. You didn't get this from the defendant? A. No, sir."

E. T. Smith, sheriff, testified that he was out around Bedford Reville's house on the night of December 25th, and along about 10 o'clock a car drove up and Delmar Yoakum left the car and went into the house and talked to defendant, who went out of his sight and came back with a half gallon fruit jar and handed it to Yoakum, who threw something that rattled like money on the table and walked out and got in the car and left.

For the defense, Bedford Reville, his wife, and two or three other witnesses testified that they were at the Reville home that night when Delmar Yoakum came there, and did not see him receive any whisky from the defendant, or leave any money on the table. One of the witnesses testified that he bought a half gallon of whisky from Delmar Yoakum at the bridge north of Gould, about an hour before.

As a witness in his own behalf the defendant testified that he bought a quart of whisky from Delmar Yoakum that evening about 9 o'clock; that Charley Boggs was with him. He denied selling any whisky to Yoakum.

As to what is the proper practice on cross-examination of witnesses, the general rule is that the party cross-examining should be confined to the matters concerning which the witness has been examined in chief; but this rule should be liberally construed so as to permit any question to be asked on cross-examination which rea-

sonably tends to explain, contradict, or discredit any testimony given by the witness in chief, or to test his accuracy, memory, veracity, character, or credibility. This must necessarily include impeaching questions, although they may relate to matters independent of the questions testified to in chief.

In Gibbons v. Territory, 5 Okla. Cr. 212, 115 P. 129, this court held:

"The cross-examination of a witness is not to be confined to the particular questions asked, nor the precise subjects called to his attention on direct examination. The correct rule is to allow the cross-examination to extend to any matter not foreign to the subject-matter of such examination and tending to limit, explain, or modify the same."

In Rogers v. State, 8 Okla. Cr. 226, 127 P. 365, this court held:

"Where the state places a witness on the stand, who testifies to a certain transaction, it thereby voluntarily opens a door which it cannot arbitrarily close, until the defendant on cross-examination has brought out all the facts within the knowledge of such witness material to a thorough understanding of that part of the transaction which the state has proven."

And see Creek v. State, 16 Okla. Cr. 492, 184 P. 917; Hopkins v. State, 9 Okla. Cr. 104, 130 P. 1101.

While the extent of cross-examination of a witness is largely within the discretion of the trial court, we think that the exclusion of the testimony offered was a manifest abuse of such discretion. For that error the judgment must be reversed.

BESSEY, P. J., and EDWARDS, J., concur.