## ELLETT RHEA THOMPSON v. STATE.

No. A-9853.   Oct. 8, 1941.

(118 P. 2d 269.)

Springer & Springer, of Stillwater, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Ellett Rhea Thompson, was charged by information filed in the district court of Payne county, on September 26, 1939, with the offense of driving an automobile while under the influence of intoxicating liquor, was tried, convicted and sentenced to serve four months in the State Penitentiary, from which judgment and sentence he appeals to this court.

Counsel for the defendant presents many assignments of error in his brief. Some of these assignments are directed to the ruling of the court on the admissibility of certain evidence; and, with the exception of the questions asked by the defendant on the cross-examination of the witness Chickering, the rulings of the court appear to be correct.

Because, as we view the matter, this case must be reversed on other grounds, the questions raised as to the court's rulings on the matters of evidence will not be discussed, except where it is apparent to us that the

court erred, and that such error possibly affected the outcome of the trial.

The proof of the state is to the effect that about 10 p. m. on August 27, 1939, the defendant was driving a red Ford pick-up east on State Highway No. 33 between Cushing and Drumright, while he was under the influence of intoxicating liquor; that while driving in this manner, he swerved across the road, hitting a culvert, and blowing out an automobile casing.

The evidence of the defendant is that the defendant was not driving the automobile, but that said car was being driven by one Charles Lemons, and that the defendant was not under the influence of intoxicating liquor.

This case will have to be reversed because of certain occurrences during the trial, which in our opinion have prevented the defendant from having a fair and impartial trial.

At the outset, the defendant asked that the witnesses be placed under the rule. The court placed all of the witnesses under the rule except two highway patrolmen and a police officer. These three officers were the only people who testified that the defendant was under the influence of intoxicating liquor on that occasion. The defendant objected to the officers being excepted from the application of the rule, and excepted to the action of the court in refusing to apply the rule to them.

We have held that the right to have witnesses placed under the rule and excluded from the courtroom during the trial was not an absolute right of defendant, but a matter in the discretion of the trial court. Harrell v. State, 36 Okla. Cr. 225, 253 P. 516.

Occasionally cases will arise where it is necessary for officers to be in the courtroom to expedite in the handling of the trial and to assist the court in keeping order. In this case the defendant was out on bond, and the presence of these three officers was not necessary to guard the prisoner; no good reason appears to us as to why they should have been exempted from the general rule applicable to all of the witnesses.

The practical effect of the court's order was to exclude all of defendant's witnesses from the courtroom, while allowing those testifying for the state to remain and hear each other's testimony.

This ruling of the court might have been harmless, except that when considered in connection with other events that transpired during the trial, hereinafter discussed, it amounts to depriving the defendant of that fair and impartial trial guaranteed to him under our laws.

The witness, Chickering, was with the defendant at the time of the alleged wreck, and testified on behalf of the state concerning the activities of the defendant for several hours prior to the incident in question. Chickering testified that earlier in the day, he, Hurst, and the defendant had drunk some whisky, and that the defendant drank a bottle of beer in Cushing, which was before they started on the trip which ended in the automobile striking the culvert.

On cross-examination of the witness, counsel for defendant sought to cross-examine him concerning the intoxication of the defendant, to which the court sustained objections by the county attorney.

We think this was error.

After the state had examined Chickering fully with reference to all that it desired to prove as to the defendant having been drinking intoxicants and as to the manner of the accident, the defendant should have been allowed, on cross-examination, to bring out anything that the state had omitted to show, which would in any manner tend to shed light upon the transaction.

In Gibbons v. State, 34 Okla. Cr. 407, 246 P. 1107, this court stated:

"The cross-examination of a witness is not to be confined to the particular questions asked, nor the precise subjects called to his attention, on direct examination. The correct rule is to allow the cross-examination to extend to any matter not foreign to the subject-matter of the examination in chief, which tends to limit, explain, or modify the same."

The state cannot be permitted to prove one part of a transaction by a witness, and by failing to question him with reference to a matter which constitutes an essential element of the same transaction, force a defendant to place a hostile witness upon the stand for the purpose of proving the matter which had been omitted by the state.

We are of the opinion that the trial court erred in refusing to allow the defendant to cross-examine the witness as to whether the defendant was under the influence of intoxicating liquor at the time of the wreck.

It is next urged that the county attorney and sheriff arrested the defendant's witnesses, one after another, as they left the witness stand and lodged them in jail. That such activities on the part of the sheriff and county attorney were widely discussed in the lobby of the courthouse, outside of the courtroom; that the jury, excused for several minutes' recess while the court was preparing

his instructions, were allowed to mix and mingle with the spectators outside of the courtroom, and were bound to have learned of these arrests to the prejudice of the defendant. That such arrests intimidated two of defendant's witnesses, who refused to testify after being subpoenaed, because they did not wish to be harassed by the county attorney or humiliated by being placed in jail.

This matter was raised in a supplemental motion for a new trial filed by the defendant. Upon the hearing upon said motion, the defendant placed the sheriff upon the witness stand, who swore that he arrested Mae Smith, Merle Frees, one Dye, and Charles Lemons, witnesses for the defendant who testified to the fact that Charles Lemons was driving the red pick-up at the time it was alleged by the state that the defendant was driving. The sheriff testified that he arrested these witnesses just outside of the courtroom, while the trial was in progress, at the direction of the county attorney and confined them in jail. That Frees and Mae Smith were held in jail a day or two for investigation before being released, and that charges of perjury were filed against Dye and Lemons in connection with their testimony in this case. That there were several spectators and witnesses in the lobby outside of the courtroom when these arrests occurred.

In rebuttal, the county attorney introduced affidavits from each of the 12 jurors who sat on the case that they did not hear the case discussed outside of the actual trial of said case by any one.

It is not our purpose to comment upon whether the county attorney was justified in filing the perjury charges against these parties, as that was a matter directed to the discretion of the county attorney who was chosen by the people of Payne county to investigate all crimes com-

mitted in that county. It was his duty, if perjury was committed, to prosecute the same vigorously. But it was further his duty to commit no act during the trial for the purpose of intimidating defendant's witnesses, or to convey to the jury from facts obtained outside of the courtroom the personal opinion of the prosecutor that the defendant's witnesses were guilty of perjury in connection with the case on trial.

There was no direct proof that the jury learned of these arrests. On the contrary, although the affidavits do not expressly so state, the inferences from the statements of the jurors are that they did not hear any comment concerning the arrest of the defendant's witnesses. After the arrests were made, the jury was allowed to separate and mingle with the spectators during a recess while the court was preparing his instructions; and it would be unusual if some of the jurors did not learn from some remark, carelessly or intentionally made by a spectator, that the defendant's witnesses had been arrested for lying on the witness stand.

It is evident that if such procedure on the part of a county attorney was encouraged, there would be a great temptation to abuse this privilege. The danger inherent in such a practice is so great that we cannot place our stamp of approval on the same. If it should become necessary to arrest a witness whom the county attorney believes has committed perjury, great care should be exercised to see that this is not done in the presence or hearing of the jury, and knowledge of such arrest should be kept from the jury.

Defendant and his counsel each testified at the hearing on this motion that two witnesses subpoenaed by the defendant, Bill Criswell and Hollis Ashcraft, refused to testify to certain truths favorable to the defendant's

cause, after they saw the arrest of the other witnesses for the defendant, because they did not want to be locked up by the county attorney.

It is all right for the county attorney to let the public know that he will prosecute any witnesses that might commit perjury in any of the courts in his jurisdiction. But the manner of making this determination to prosecute known should not be such that a truthful witness would be kept from testifying for a defendant for fear of being arrested by a prosecutor. However, there will be very few cases where an honest witness will be prevented from testifying through fear of action against him by the county attorney.

After thorough consideration of this matter, we have come to the conclusion that the defendant has made a sufficient showing to impel us to the conclusion that the action of the county attorney in connection with the arrest of defendant's witnesses materially prejudiced the defendant in this case.

For the reasons hereinabove stated, the judgment of the district court of Payne county is reversed and remanded, with instructions to grant the defendant a new trial in accordance with the views herein expressed.

BAREFOOT, P. J., and DOYLE, J., concur.